**Jeffrey L. BAGGETT,**
**Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

No. 82A01–8610–CR–286.

Court of Appeals of Indiana,
First District.

May 14, 1987.

Rehearing Denied June 22, 1987.

Jeffery L. Lantz, Lantz, Shaw and Corbett, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

STATEMENT OF THE CASE

Jeffrey L. Baggett appeals his conviction after a jury trial for child molesting, a class C felony.[1] We reverse.

1. Indiana Code section 35–42–4–3.

## FACTS

Baggett was indicted on two counts of child molesting. For the first count, M.M. was the alleged victim. M.M., eight years old at the time of trial, was Baggett's niece by his marriage to Susan. For the second count, S.B. was the other alleged victim. S.B. was twelve years old at the time of trial. S.B. also was Baggett's niece by marriage.

During the trial, the state questioned Susan, Baggett's former wife, on direct examination. Susan and Baggett were divorced in September of 1985. Susan testified as to conversations between Baggett and herself which occurred prior to their divorce. Susan testified that Baggett told her in February 1985, about prior instances of molestation with S.B., Susan's niece. The following colloquy took place:

"Q. What did he tell you about S.B.?

"A. He said that he had had relations with her.

"Q. Did he describe what kind of relations?

"A. He said that he had touched her in places that he probably shouldn't have."

Record at 103. Susan then testified about confronting S.B. with this information acquired from Baggett.

"Q. What did you say to S.B.?

"A. I told her that I had talked to Jeff [Baggett] and he said that he had had relations with her and I wanted to know if it was true....

"Q. Did you press on with the conversation?

"A. Yes. I told her that he had told me that he had done some things to M.M. ...

"Q. After you told her that what did she say then?

"A. She said yes that he had on several occasions had sexual relations with her."

Record at 103–04. At no time during this testimony did Baggett's counsel object.

Later, Susan testified as to what Baggett told her about M.M.

"Q. At that time in February of 1985 you told her [S.B.] that you had had conversation with Mr. Baggett about M.M. When did that conversation take place? ...

"A. I believe it was in early part of March....

"Q. What did you ask Jeff at that meeting ...?

"A. I asked him if he had done something to one of David's kids.... [H]e told me that he had taken M.M. on some Labor Day, '84 I believe and he had her in the car....

"Q. What did he tell you happened on that trip?

"A. He said that on the way back he put his hands in M.M.'s pants and that he started to take her clothes off of her but then he stopped cause he didn't know why he was doing it...."

Record at 104–05. At no time during this testimony did Baggett's attorney object.

The jury did not reach a verdict on Count I which involved M.M. However, the jury found Baggett guilty of child molesting under Count II of the indictment which involved S.B. Baggett appeals.

## ISSUE

Although Baggett raises four issues on appeal, we find the following issue dispositive:

Whether the defendant was afforded adequate representation of counsel because of counsel's failure to object to testimony from the defendant's former spouse concerning conversations which occurred during marriage.

## DISCUSSION AND DECISION

Our supreme court recently set forth the two-step analysis for a challenge to the adequacy of representation.

"In determining whether a defendant has been denied the effective assistance of counsel, the reviewing court must de-

termine whether, in light of all the circumstances, the acts or omissions of which a defendant complaints [sic] are outside 'the wide range of professionally competent assistance.' *Strickland v. Washington* (1984), [466] U.S. [668], [690], 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695; *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291, 1294. A strong presumption exists that counsel rendered adequate legal assistance. *Id.* Even if a defendant establishes that his attorney's acts or omissions were outside the wide range of competent professional assistance, he must also establish that counsel's errors had an adverse effect upon the judgment. *Strickland v. Washington*, [466 U.S. at 692], 104 S.Ct. at 2067, 80 L.Ed.2d at 696; *Lawrence v. State*, 264 [sic] N.E.2d at 1294. Moreover, it is not necessary for the reviewing court to 'address both components of the inquiry if the Defendant makes an insufficient showing on one' or to 'determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.' *Strickland v. Washington*, [466 U.S. at 697], 104 S.Ct. at 2069–2070, 80 L.Ed.2d at 699; *Kruckeberg v. State* (1984), Ind., 465 N.E.2d 1126, 1129."

*Aubrey v. State* (1985), Ind., 478 N.E.2d 70, 73. With this standard in mind, we now turn to a consideration of the husband-wife privilege and Baggett's counsel's performance.

■ Over a century ago, our legislature pronounced that a husband and wife, as to communications made to each other, are not competent witnesses. Acts 1881 (Spec.Sess.), ch. 38, § 275, p. 240, *codified at*, Indiana Code section 34-1-14-5. "Although at common law the wife was adjudged to be an incompetent witness against her husband, Indiana has by statute modified the common law and has determined a spouse to be incompetent only as to communications made to the spouse." *Merry v. State* (1975), 166 Ind.App. 199, 217, 335 N.E.2d 249, 260, *trans. denied.* Although the statute is phrased in terms of competency, "the matter is actually one of

privileged communication." *Shepherd v. State* (1971), 257 Ind. 229, 231, 277 N.E.2d 165, 166. The privilege is not limited to written or verbal communications but can encompass actions as well. *Id.* The privilege adheres to "the imparting of information, however conveyed, when done in reliance upon the inviolate nature of the marital relationship." *Id.* at 234, 277 N.E.2d at 168. The husband-wife privilege only applies to communications made during the course of marriage. Communications made between ex-spouses after a divorce are not privileged and do not fall under Ind. Code § 34-1-14-5. *Damrell v. State* (1976), 170 Ind.App. 256, 259, 352 N.E.2d 855, 857.

■ In the case under consideration, Susan testified as to conversations with Baggett about child molestations involving M.M. and S.B. Susan testified that these alleged conversations took place prior to their divorce. Clearly, these communications were protected by Ind. Code § 34-1-14-5 and should have been excluded.

■ The state argues that Baggett's attorney's failure to object to this testimony on the basis of the husband-wife privilege did not constitute conduct which fell outside the wide range of professionally competent assistance. Rather, the state argues that the failure to object simply was miscalculated trial strategy. We disagree. It was not within the bounds of professional competence to let in the inadmissible damaging evidence and then, on cross-examination, try to disprove Susan's credibility. Baggett's counsel apparently was attempting to show that Susan's purpose in testifying was to spite her ex-husband. A far wiser tactic would have been to object to the evidence in the first instance without having to attempt to discredit it later. To do otherwise was unreasonable. Thus, Baggett has overcome the presumption of adequacy and proven the first element under *Strickland* and its progeny.

Baggett's trial counsel's deficiency in failing to object to Susan's testimony greatly prejudiced Baggett. The two alleged victims' credibility was a crucial issue in the prosecution. Without Susan's testimony about Baggett's confessions to her, the girls' testimony essentially would have

been uncorroborated.[2] Since there was no other corroborating evidence, we cannot presume Susan's testimony about Baggett's confessions was harmless. *Baker v. State* (1987), Ind., 506 N.E.2d 817. Even with Susan's testimony, the jury was unable to reach a verdict on the charge accusing Baggett of molesting M.M. This demonstrates the jury's reluctance to believe the children's testimony, at least as to M.M. If Baggett's counsel had objected to Susan's testimony, the jury would have had less evidence before it inculpating Baggett for the molestation of S.B.; the jury simply would have had S.B.'s testimony to support the state's allegations. Baggett was prejudiced further by Susan's testimony about their marital communications since it impeached his denial of all instances of child molestation. Susan's testimony also presented to the jury an inadmissible admission of guilt allegedly made by Baggett. Therefore, Baggett has shown that his trial counsel's failure to object to critical portions of Susan's testimony was greatly prejudicial.

Since Baggett has satisfied both prongs of the *Strickland* analysis, we reverse and remand for a new trial.

ROBERTSON, and YOUNG, JJ., concur.

---

**2.** The only other person to testify during the State's case-in-chief was M.M.'s father. His testimony was premised upon what Susan told him about Baggett's confessions.