John GLOVER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0401–CR–4.

Court of Appeals of Indiana.

Nov. 5, 2004.

Kimberly A. DeVane, Crawford & DeVane, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

John Glover brings this interlocutory appeal challenging the denial of his motion to suppress the testimony of his wife, Bobbie Glover, in his trial for the murder of Tammy Gibbs. We reverse.

### Issue

We address one issue, which we restate as whether the trial court erroneously found that the spousal privilege did not apply to Bobbie's testimony.

### Facts

Glover and Bobbie were lawfully married in Kentucky in February 2002. On September 17, 2002, Gibbs' boyfriend found her dead body floating facedown in her bathtub. An autopsy revealed that she had been strangled. Two weeks later, Bobbie went to the police station and told officers that Glover admitted to her that he had killed Gibbs. According to Bobbie, Glover demonstrated how he had placed his hand around Gibbs' neck and placed her in a bathtub full of water.

The State charged Glover with Gibbs' murder in October 2002 and listed his wife as a State's witness on the charging information. In June 2003, Glover filed a motion to suppress Bobbie's testimony pursuant to the spousal privilege codified at Indiana Code Section 34–46–3–1. The trial court denied the motion after a hearing. Specifically, the court found that the only purpose of the Glovers' marriage was to assist Bobbie, who immigrated to the United States from India in 1999, to remain in this country legally. Appellant's App. p. 84. The court concluded that under these circumstances, where the purpose of the marriage was to defraud the federal government, even though the parties were legally married, they were "in no sense of the word ... spouses," and the spousal privilege did not apply. Appellant's App. p. 84. Glover appeals.

### Analysis

Glover's sole argument is that the trial court erred when it failed to apply the spousal privilege to Bobbie's testimony. Indiana has long protected the privacy of spousal communications. *Russell v. State*, 743 N.E.2d 269, 271 (Ind.2001). Over one hundred years ago, our supreme court recognized that "[w]here the criminal, in seeking advice and consolation, lays open his heart to his wife, the law regards the sacredness of their relation, and will not permit her to make known what he communicated, even as it will not ask him

to disclose it himself." *Beyerline v. State,* 147 Ind. 125, 130, 45 N.E. 772, 774 (1897). "Strong public policy grounds favor promotion and preservation of marital confidences even if truthful and invaluable testimony in certain cases is excluded." *Shepherd v. State,* 257 Ind. 229, 232, 277 N.E.2d 165, 167 (1971).

The spousal privilege, which is today codified at Indiana Code Section 34–46–3–1(4), provides as follows:

> Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications:
>
> \* \* \* \* \*
>
> Husband and wife, as to communications made to each other.

■ The spousal privilege has been interpreted as protecting only those communications passing from one marriage partner to the other because of the confidence resulting from their intimate marriage relationship. *Beyerline,* 147 Ind. at 130, 45 N.E. at 774. The spousal privilege is subject to waiver where the defendant gives direct testimony concerning his communication with his spouse during the time in question, *Taylor v. State,* 567 N.E.2d 98, 102 (Ind.1991).

■ The privilege is also subject to certain other well-established exceptions. For example, where the spousal communication is made in the presence of a third person, our supreme court has held that no privilege exists because of the lack of confidentiality. *Holt v. State,* 481 N.E.2d 1324, 1326 (Ind.1985), *cert. denied,* 481 U.S. 1031, 107 S.Ct. 1960, 95 L.Ed.2d 532 (1987). The same is true for a communication "intended to be communicated to a third person." *Resnover v. State,* 267 Ind. 597, 601, 372 N.E.2d 457, 459 (1978). In addition, there is an exception to the spousal privilege where the offense charged was committed by one spouse against the other. *Shepherd,* 257 Ind. at 232–33, 277 N.E.2d at 167. Lastly, the parties must have a legally recognized marriage in order to claim the spousal privilege. *Holt,* 481 N.E.2d at 1326.

Here, Glover did not waive the spousal privilege, and the trial court's reason for finding that the privilege did not apply does not fall within one of the well-established exceptions to the privilege. Rather, the State asks us to find a "fraudulent" marriage exception to the privilege, despite the facial legality of the Glovers' marriage. In support of its request, the State directs us to *Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

In *Lutwak,* World War II veteran Marcel Lutwak and others were convicted of conspiracy to defraud the United States after entering into phony marriages for the purpose of deceiving immigration authorities. Because much of the evidence of the conspiracy came from Lutwak's spouse, on appeal he argued that the marital relationship rendered his wife incompetent to testify against him. The United States Court of Appeals for the Seventh Circuit affirmed Lutwak's conviction, *United States v. Lutwak,* 195 F.2d 748 (7th Cir.1952). The United States Supreme Court granted certiorari and affirmed. In reaching its decision, the Supreme Court relied on Rule 26 of the Federal Rules of Criminal Procedure, which provided in relevant part as follows:

> The admissibility of evidence and the competency and privileges of witnesses should be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

*Lutwak,* 344 U.S. at 614, 73 S.Ct. at 487. The Supreme Court concluded that, where the parties entered into a sham marriage to defraud the federal government, the light and reason of experience did not compel the Court to interpret the common law to disqualify the alien spouses from testifying. *Id.* at 615, 73 S.Ct. at 488. The Court therefore affirmed Lutwak's conviction. *Id.* at 619–20, 73 S.Ct. at 490.

*Lutwak,* however, is not binding on this court. Federal rules provide an extremely broad exception to federal privileges. Rule 501 of the Federal Rules of Evidence uses the language previously found in Rule 26 of the Federal Rules of Criminal Procedure and expressly states that privileges are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

Federal courts have more recently used Rule 501 to narrow the spousal testimonial privilege.[1] In *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186, (1980), the Supreme Court determined that a husband could not prevent his wife, who had been granted immunity, from testifying against him. In support of its decision, the Court concluded as follows:

> Our consideration of the foundations for the privilege and its history satisfy us that 'reason and experience' no longer justify so sweeping a rule.... Accordingly, we conclude that the existing rule should be modified so that the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying. This modification—vesting the privilege in the witness-spouse—furthers the important public

interest in marital harmony without unduly burdening legitimate law enforcement needs.

*Trammel,* 445 U.S. at 53, 100 S.Ct. at 914.

Although federal courts interpreting federal rules are expressly permitted to engage in common-law development of privileges and exceptions, Indiana's statutory scheme does not so permit. For example, in *State v. Roach,* 669 N.E.2d 1009 (Ind.Ct.App.1996), this court found that the trial court erred in refusing to compel a wife to testify against her husband on the basis of the *Trammel* spousal testimonial privilege. Specifically, we noted that the trial court erred in looking to federal law for guidance to justify the creation of a privilege not theretofore recognized in Indiana state courts. *Id.* at 1010. We pointed out that Indiana generally recognizes that privileges are statutory in nature and that it is within the power of the legislature to create them and concluded that the creation of such a privilege is best left to the legislature and not the courts. *Id.*

We reach the same conclusion on the issue before us. In light of the nature of the more than one-hundred-year-old statutory privilege and its well-established exceptions, we decline the State's request to follow federal law and create a "fraudulent" marriage exception to the spousal privilege. Such a creation is best left to the legislature.

Furthermore, to the extent the State argues that the Glovers' marriage was fraudulent because John and Bobbie intended to defraud the federal government to evade immigration laws, we point out that there is no dispute that the marriage

---

**1.** The spousal testimonial privilege differs from the statutory spousal privilege that we are addressing today. The spousal testimonial privilege can be invoked by either spouse to refuse to testify against the other whereas the statutory spousal privilege applies to communications between a husband and a wife.

is lawful under the laws of Kentucky, and by extension is lawful in Indiana. Where we are concerned with applying a state statute in a state court proceeding, the relevant consideration is whether that marriage is lawful according to state law. The fact that Bobbie was Glover's lawful wife "put the seal on her lips" and excluded her from being called as a witness against him unless one of the well-established exceptions to the privilege applied. *State v. Chrismore*, 223 Iowa 957, 274 N.W. 3, 5 (1937) (holding that [w]hen the marriage ceremony is performed, no matter what the motive was or may be, the witness thenceforward becomes the lawful wife of defendant, and is prohibited under our statute from testifying against her husband, except where the offense is by the husband against her person.")

Additionally, we believe accepting the State's position would allow for the creation of numerous "exceptions" to the spousal privilege and create undue uncertainty in its application if courts were to routinely inquire into the "quality" of a marriage before determining whether the privilege applies. For this additional reason, we decline to judicially create a "fraudulent" marriage exception to the spousal privilege.

### Conclusion

The trial court erred when it found that the spousal privilege did not apply to Bobbie's testimony and denied Glover's motion to suppress. We reverse.

Reversed.

NAJAM, J., and SULLIVAN, J., concur.